IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **BRENDA LEIGH ROBERTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:21-cv-554-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction and Administrative Proceedings

Brenda Leigh Roberts ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on April 24, 2020 wherein she alleged disability due to unknown mental impairment.  (Tr. 10, 36-38).[1, 2]   The claim was denied at the initial level on July 8, 2020 and again after reconsideration on August 18, 2020.  (Tr. 10, 43-45, 51-52, 63).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 10, 66, 79).  The ALJ subsequently heard the case on February 2, 2021, at which time testimony was given by Plaintiff.  (Tr. 10, 24-34).  The ALJ took the matter under advisement and issued a written decision on February 23, 2021 that found Plaintiff not disabled.  (Tr. 10-15).

The ALJ's written decision contained the following enumerated findings:

1.  The claimant has not engaged in substantial gainful activity since April 24, 2020, the application date (20 CFR 416.971 *et seq.*).

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

[2] Plaintiff alleged a disability onset date of April 1, 2020.  (Tr. 10, 37).  However, Plaintiff's appeal requires a showing of disability between the date of her April 24, 2020 application and the date of the ALJ's February 23, 2021 decision.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

2. There are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 416.920(c)).

3. The claimant has not been under a disability, as defined in the Social Security Act, since April 24, 2020, the date the application was filed (20 CFR 416.920(c)).

(Tr. 12, 15).  On August 4, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner.  *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.  (Doc. 1 at p. 3; Doc. 13 at p. 6).  The court finds the case to be ripe for review pursuant to 42 U.S.C. § 405(g); specifically, the court construes Plaintiff's supporting brief (Doc. 13) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 14) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.[3]

## II.   Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but

---

[3] As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge. (Docs. 6 & 7).

2

less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors

4

yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

### III.   Issues on Appeal

Plaintiff raises one issue on appeal: whether the ALJ erred in failing to develop the record on her alleged mental impairment.  (Doc. 13 at p. 3).

### IV.   Discussion

Plaintiff asserts that she meets the requirements under Listing 12.08 for personality and impulse-control disorder and that the ALJ should have sent her for further evaluation.  (Doc. 13 at pp. 4-5).  In response, the Commissioner contends that Plaintiff's argument concerns step three of the sequential evaluation process and ignores the ALJ's finding that she did not establish any medically determinable impairments at step two—which is a prerequisite to proceeding to step three.  (Doc. 14 at pp. 1, 4).

As previously stated, disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The Agency] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 416.921.  Moreover, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."  *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933 at *5 (M.D. Ala. Oct. 18, 2017) ("[T]he mere diagnosis of [a condition] says nothing about the severity

of the condition.") (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also* 20 C.F.R. §§ 416.920(c), 416.905(a).[5]  The burden of proving an impairment is upon the plaintiff. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

      "Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, which acts as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  "If the ALJ finds a claimant does not have a 'severe' impairment or combination of impairments, she should conclude the claimant does not have a disability." *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[T]he regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability."); 20 C.F.R. § 416.920(a)(4)(ii).  "If a claimant succeeds at step two, the ALJ must go on to step three and then, if necessary, to steps four and five." *McDaniel*, 800 F.2d at 1032.  "At step three, the claimant must show that her severe impairment meets or equals the criteria in the Listings of Impairments." *McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 887 (11th Cir. 2014).  "[I]f the impairment meets or equals a listed impairment, disability is automatically established." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824 (11th Cir. 2010); 20 C.F.R. § 416.920(a)(4)(iii), (d).  Again, however, "the ALJ does not go on to step three if the claimant fails to meet step two." *McMahon*, 583 F. App'x at 887; 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

---

[5] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting."  20 CFR § 416.922(b).

"Social Security proceedings are inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham*, 129 F.3d at 1422. "This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, assist the Claimant in obtaining evidence from his or her treating sources, and order a consultative examination when such an examination is necessary to make an informed decision." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052 at *2 (M.D. Fla. Jan. 28, 2021); 20 C.F.R. § 404.1512(b)(1)-(2).

The ALJ's obligation to develop the record "exists even if the claimant is represented by counsel or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted). However, "[t]here must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955 at *4 (M.D. Fla. Sept. 10, 2019), *aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have all of the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez*, 2021 WL 289052 at *3 (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134 at *2 (11th Cir. June 1, 2022). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."

7

*Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. § 404.1512(a) (stating that "you have to prove to us that you are ... disabled.  You must inform us about or submit all evidence known to you that relates to whether or not you are ... disabled ... . This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.").

Plaintiff argues that she informed the ALJ at the hearing that she was alleging disability under Listing 12.08 and that the ALJ failed to address her symptoms under Listing 12.08. (Doc. 13 at p. 5; Tr. 28).  Yet Plaintiff failed to meet her burden at step two of showing that she suffers from a severe impairment or combination of impairments. Plaintiff did not submit any medical evidence whatsoever that she suffered from a medically determinable impairment. The objective medical evidence and opinion evidence instead showed that Plaintiff did <u>not</u> suffer from a medically determinable impairment.  Plaintiff's April 2020 disability report reflected that she alleged an unknown mental condition, she reported taking no medications (prescription or non-prescription), and she reported "no doctor or other health care or treatment at a hospital or clinic." (Tr. 13, 215-221).

The ALJ considered Plaintiff's function report where she reported performing household chores, such as washing her clothes, making the bed, and emptying the trash, and doing hobbies, including reading books, enjoying DVD's, and working word puzzle books.  (Tr. 13, 209, 211). The ALJ noted that Plaintiff reported no illnesses, injuries, or conditions that affected her. (Tr. 13).  The ALJ also considered a May 2020 third-party function report where Plaintiff's friend, who had known Plaintiff for five months, reported that Plaintiff went out alone and drove and that her hobbies included reading and driving, and reported that Plaintiff had no illnesses, injuries, or conditions that affected her.  (Tr. 13, 191, 195, 197).  The ALJ additionally considered the Appeals Form received in August 2020, which showed that Plaintiff maintained no changes

since she completed her disability report, that she reported having not seen a doctor or other health care provider or receiving treatment at a hospital or clinic, and that she reported taking no medicines (prescription or non-prescription).  (Tr. 13, 185-190).

As to Plaintiff's testimony, the ALJ noted that Plaintiff stated she did not cook but would do a little washing and would cut the yard on the days when she felt well.  (Tr. 13, 29).  The ALJ further noted that Plaintiff testified that she never worked at a public or private job for pay, that she lived at home with her parents for most of her life but currently lived alone, and that she had a car and a driver's license.  (Tr. 13, 29-31, 33).  The ALJ also considered the findings of Jennifer M. Jackson, Psy.D., who performed a psychological consultative examination on Plaintiff in June 2020:

> Jennifer M. Jackson, Psy.D., performed an Adult-Telehealth Mental Examination of the claimant on June 24, 2020 (Exhibit 1F). When asked her reason for applying for disability benefits, the claimant stated, "I need a lot of cash." A need for cash, however, although possibly a basis for other benefit programs, is not a legal basis for disability under this particular program. The claimant was unable to identify any specific mental health problems. No emotional problems or psychological symptoms were reported. She added, "We all have good and bad days." She described her sleep as "sometimes well and sometimes not too well." No formal psychiatric history was reported. She denied ever seeking any treatment for mental health symptoms. The claimant reported that she graduated from Tallassee High School in 1980. She currently lives alone in Tallassee, Alabama. She reported that she has never been employed. She denied use of alcohol and other drugs. Telehealth appointment [sic]. On mental status exam, the claimant displayed no obvious difficulties with fine or gross motor skills. Her hearing appeared within normal limits. She was generally pleasant and cooperative. No unusual behaviors were observed. Her mood/affect seemed appropriate. She did not appear anxious. The claimant was oriented to time, place, and person. With concentration and attention, she was able to subtract serial 2's correctly. She could add 4+5 and subtract 6 from 10. She could count backwards from 20 to 1. She was able to spell "world" backward. With immediate memory, the claimant could recall five digits forward and four digits backward. She could recall three words after five minutes. With recent memory, she was able to describe general memories for activities on the day of the exam and previous day without apparent difficulty. With remote memory, she was able to remember general historical information about herself without apparent difficulty. With fund of information, the claimant could identify the number of months in a year, the purpose of a thermometer, where the sun rises, the

capital of Alabama, and the first U.S. President. She could not identify the number of weeks in a year. With abstractions, the claimant could see an association between an orange and a banana, a lion and a dog, and a piano and a guitar. She could not see an association between a boat and an automobile ("different") or a table and a chair ("go together"). She could not interpret the proverb "don't judge a book by its cover," but she could interpret the proverb "don't cry over spilled milk." With though[t] process, there were no signs of confusion, loose associations, or tangential or circumstantial thinking. She spoke at a normal pace. Her speech did not appear pressured. She did not mumble or slur her words. With thought content, there were no signs or reports of hallucinations or delusions. There were no other distortions of thinking or preoccupations reported. There were no reports of suicidal or homicidal ideations. Her judgment seemed limited. She appeared to have limited insight into herself and her condition. With daily activities, the claimant described her daily activities as eating two meals a day and reading books. She said that she was only able to bathe in the summer due to the poor condition of her house. She explained that she does not have a "modern" bathroom but rather uses a bucket as a toilet. She washes her clothes in a pan of water. The claimant reported that she completes all personal activities of daily living independently. She said that she knows how to wash dishes, sweep, mop, vacuum, make a bed, and clean a bathroom. She knows how to cook and do laundry. She knows how to drive and has a license. She described her reading and arithmetic skills as "very well" and her writing skills as fair. She said that she could count money and make change well enough to shop independently. She can stay at home unsupervised. Dr. Jackson's diagnostic impression was "<u>no diagnosis</u>". Dr. Jackson noted that the medical evidence of record provided by DDS was reviewed and those findings were considered in the overall assessment of this individual.

(Tr. 14, 231-34) (emphasis in original).

As to the prior administrative findings and opinion evidence, the ALJ considered the prior administrative medical findings of Robert Estock, M.D., the State agency medical consultant. (Tr. 15, 40-43). Dr. Estock found that there were not any mental medically determinable impairments (MDI) established. (Tr. 41). The ALJ found Dr. Estock's finding persuasive. (Tr. 15). Similarly, the ALJ also found persuasive the prior administrative medical findings of Arnold Mindingall, Ph.D., the State agency medical consultant, that no mental medically determinable impairment had been established. (Tr. 15, 47-51). The ALJ further found that Dr. Jackson's opinion of "no diagnosis" was persuasive and was supported by her own clinical examination and testing. (Tr. 15, 231-34). In conclusion, the ALJ found that there were

"no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (Tr. 15).

Based upon the foregoing, the court concludes that substantial evidence supported the ALJ's determination. (Tr. 12, 15). Because Plaintiff failed to establish that she suffered from a severe impairment at step two, the ALJ did not err by not proceeding to a discussion of Listing 12.08 at step three. *See Vangile*, 695 F. App'x at 513; *Tuggerson-Brown*, 572 F. App'x at 951; *McMahon*, 583 F. App'x at 887; 20 C.F.R. § 416.920(a)(4)(ii); *see also Ellison*, 355 F.3d at 1276 (a claimant is responsible for producing evidence in support of his or her claim).

As to Plaintiff's argument that the ALJ failed to develop the record by not obtaining another mental consultative examination, the ALJ was under no duty to do so. An ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("The ALJ 'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'") (citation omitted). The "[o]rdering [of] a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (citation omitted); 20 C.F.R § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Here, the ALJ considered Plaintiff's testimony, her disability report, the function reports, the Appeals Form, and

the prior administrative findings.  In addition, the ALJ considered Plaintiff's mental consultative examination by Dr. Jackson.  At the hearing, Plaintiff's counsel did not object to any of the exhibits, which included the consultative examination, nor did Plaintiff's counsel request another consultative examination. (Tr. 27).  Because the record contained sufficient evidence for the ALJ's determination, an additional consultative examination was not necessary.  *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) ("The administrative law judge was not required to order an additional medical examination to develop a full and fair record. ...  Sarria fails to identify any gaps in the evidence. Sarria was represented during the administrative process and was responsible for producing evidence related to her disability. ...  Sarria's medical records, the reports of her treating psychiatrists and therapists, the assessments of agency physicians, and Sarria's self-assessments provided sufficient evidence for the administrative law judge to determine whether Sarria's depression was disabling.") (citations omitted).  "Although Plaintiff may [now] disagree with the consultative examiner's opinion, she is not entitled to a 'do-over' until she gets one that she likes."  *Taylor v. Kijakazi*, No. 2:20-CV-00611, 2022 WL 891833 at *10 (M.D. Ala. Mar. 25, 2022).  Accordingly, the court concludes that the ALJ did not err in developing the record.[6]

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

---

[6] "The basic duty to develop the record rises to a 'special duty' where the claimant <u>has not waived</u> his or her right to representation <u>and</u> is not represented during the administrative proceedings." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052 at *2 n.3 (M.D. Fla. Jan. 28, 2021) (citing *Brown*, 44 F.3d at 934-35 (emphasis added)).  Because Plaintiff was represented by counsel at the hearing (Tr. 24-35), the ALJ had only a basic duty to develop the record.

- that Plaintiff's motion for summary judgment (Doc. 13) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 14) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 29th day of September 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**